Good morning ladies and gentlemen, Judges Beatty and I would like to welcome our colleague Judge Boo from Missouri who is sitting with us here on assignment, welcome. I also would like to welcome, I know we have students I believe from Lowell High School today and welcome to the Court of Appeals and you will have an opportunity to see a lot of talented attorneys and interesting cases and my understanding of what we're going to do is after we complete the oral argument calendar, our law clerks will remain in the courtroom to talk to the students briefly while the judges conference on the cases and then we'll come back out and we'll talk to the students. Just a few housekeeping matters for those of you that are here on your cases today. I will call the matters in the order that they're on the calendar and by each of your cases you have a time designation. Expect that I will keep you to your time designation and that it's your responsibility to keep track of the time. The clock counts down and then it goes up and when it goes up that doesn't mean I gave you extra time, it means you're in overtime. But if you are answering a question of the judges when your time is up, please continue to answer any questions that the judges have because as you experienced advocates know, we will be making a decision in your case and it's important that we have all our questions answered before we make that particular decision. If you are the appellant, the time that you have is your total time and so if you wish to reserve any time for rebuttal, it's your responsibility to keep track of the time but I'm looking right at the clock so if you tell me how much time you'd like to reserve, it's obviously aspirational because if we have questions then we're going to keep asking you questions as far as that goes but I'll try to remind you when you get to that point. So the first matter on calendar for argument today is Surrender Baines v. Eric Arnold, case number 17-72069. Good morning. Your Honor, it's Gary Dukoff for applicant Surrender Baines. I'd like to reserve two minutes aspirationally speaking and in deference to the students present, I'll try and keep my profanities to a minimum. We would appreciate that. And just as background, I'm here, my client was convicted in the 1990s of first degree murder and I'm here seeking the court's permission to file a second habeas petition in the lower federal court. So we don't have a lot of time and as you know, I'm familiar with Brown v. Munez and the panel in that case held under AEDPA that AEDPA did not distinguish between material and immaterial Brady claims and that the court was bound by AEDPA. So isn't that decision binding here unless and until the Ninth Circuit reconsiders that issue en banc? Well, I was going to lead with the arguments conceding that, assuming the truth of that and arguing that I meet the standard, assuming that it applies, but I don't want to give up my argument that it's distinguishable on its facts because in that case, the suppressed evidence was not material where in this case, it's a completely different category or order of suppressed evidence as Your Honor remembers, of course, in Brown, the evidence at issue was impeachment evidence of three police officers, two of whom didn't even testify at the petitioner's trial and the other one was tangential at best because his testimony was repeated by another witness with more direct knowledge of the subject matter of the testimony, whereas in my case, the evidence that was suppressed goes directly to the credibility of a jailhouse informant who testified about the confession, the purported confession of my client and I guess tying into your argument, the critical issue is whether cross-examination of the informant would have made a difference, cross-examination on the list of demands. So as I understand the record, the informant was impeached pretty significantly at the trial so much so that the prosecutor did not rely upon that testimony in closing. So how would additional impeachment or cross-examination of that witness have made a difference? Well, first of all, it's not 100% accurate to say that the prosecutor distanced himself, which he did from the jailhouse informant's testimony because he also argued that the phone can justify the juries in returning a guilty verdict. So he did both in his closing arguments. And as far as the impeachment... Yeah, the point is Delgado got impeached for being a jailhouse snitch over and over again. Right. And that's the Superior Court's reasoning when it denied my habeas petition. It was cumulative to the impeachment that took place. It was more than just being a snitch. It was being a con man, a wolf, a shark, a liar. He testified and acknowledged that he took advantage of people and lied to gain advantage and things such as that. I'm fully aware of all of what took place at the trial, but nonetheless, on direct appeal, when the Sixth District Court of Appeal, the state appellate court, reviewed, affirmed the conviction reviewing all of that, they must have said five or six times, if they said it once, that the informant's testimony was so compelling, so powerful, so incriminating that all of these other errors that we're finding took place, including the injection of this racist nonsense into the proceedings. None of that matters because of this powerful testimony from the jailhouse informant. So how powerful could have been, how compelling could have been all the impeachment that did take place when they convicted him anyway, and the state appellate court's relying on the power of his testimony to affirm. I'd have to consider that, your argument on materiality, not only with respect to how Delgado was impeached at trial, but with respect to the weight of the government's evidence. With respect to what, Your Honor? The weight of the government's evidence at the trial. So if... In other words, you have to show factual innocence. Yes. You have to reach, it has to reach a level... Well, I'll first point to my Exhibit 3 to my application, which is the order to show the cause that was issued by the first state judge who was assigned to the case. And I didn't really realize this when I wrote my papers, but in preparing for today's argument, I saw what's happened in California is that in 2016, effectively the January of 2017, the state legislature amended the California habeas statute to greatly reduce the standard that a habeas petitioner has to meet when he's presenting newly discovered evidence. But in this case, the judge who issued the OSC was applying the old standard. And it's such an onerous standard to meet. And what the judge found in issuing his OSC was that assuming the facts to be true as I alleged it, then it meets even that onerous standard of actual innocence. And what I would argue this morning is that when a judge finds that the evidence meets that standard, it's essentially the same as meeting my clear and convincing burden here today. I thought the state court, after an evidentiary hearing, determined that Delgado's 2007 recantation was itself a scam. It totally was. And I conceded that from the get-go. So the California attorney general has relied on the courts, the superior courts, repeatedly relying on the fact that it was a perjured declaration. But that's not what I argued whatsoever. I conceded. It was clear to me, clear to us before the evidentiary hearing that that was all perjured. But it was all of the evidence I presented to the court. Don't forget that this Delgado character, as soon as he got up on the stand, perjured himself once again when he denied having asked for those benefits. Well, what about the rest of the evidence, which you know that the government's going to talk about, that they're going to claim that there was substantial evidence, including inferences from your client's own statements, that Rafael Hildalgo murdered Gurmeet Shughal at Bain's behest? My argument is that everything that was admitted at trial does not constitute such overwhelming evidence of guilt as to— Well, does it have to be overwhelming? You have to meet a minimal showing of actual innocence, right? I have to meet the clear and convincing standard. The final, second, and successive petition. Right. And, of course, this Court has already characterized that standard as a, quote-unquote, light burden. And the Court should—and counsels future panels to exercise caution, greater caution in denying it than in granting it. That's all in my paperwork that I cited, Henry v. Spearman. So the dissenting—by the way, before I forget this, the dissenting judge in the First Ninth Circuit—I forget which judge it was. Who's Judge Camby? There you go. He talked about what the majority relied on to find the errors harmless. And he rebutted the most critical evidence. You know, they constantly rely on this $200 check, for example. And everybody overlooks the fact, unlike Judge Camby— But every time you cite a dissenting judge for your proposition, it's weaker than citing the majority. Of course. You're in my times already. But the majority had no idea that this confession was a scam. Everything he said was a lie. This guy's a pathological liar. And the Court had absolutely no evidence of that. Yes, they knew about the impeachment that took place. But following the evidentiary hearing, there was absolutely no doubt that this guy lied about everything and that the prosecutor knew it and sat there and let it all happen. So my time is up. Want to take the balance for rebuttal? I just would like to add that my client was convicted at a trial that not only introduced this racist stuff, but also introduced a false confession. And given that background, the Court ought to allow me—it's so little I'm asking for. I'm just asking for fair process and the opportunity to let a district court judge hear my presentation. Thank you, Your Honor. Thank you. Good morning. Good morning. May it please the Court, Lisa Ashley Ott for Respondent. Petitioner has not made the prima facie showing necessary to show actual innocence in this case. It's not a rare case where a second or successive petition should be granted. So Brown, as you know, is binding. It's Brown and its companion case, Solaro, are exactly on point with this case. And what we have to look at is Delgado was the paid informant. He was extensively cross-examined and impeached. There's more evidence here that could be further impeachment, that's true, but it's not enough to show—to question the actual innocence here. So why don't you—because obviously actual evidence in showing that, it stacks up against what was the evidence of trial that the defendant is guilty. So how would you describe that evidence and, you know, would you describe it? You know, obviously, if the evidence was very weak at trial, even if someone's convicted, that makes a difference. So how would you describe it? What is the evidence at trial that shows the defendant's guilt? Of course, there's a lot of evidence from trial. First of all, we have telephone calls. There's over 20 telephone calls between Petitioner's home and his co-defendants in this case. In the 10 days before the murder. So those telephone calls are a great link between Petitioner and his co-defendants who actually carried out the murder. 20 of them. Not only are there those calls, but when initially questioned by police, Petitioner denied even knowing his co-defendants, let alone having spoken to them over 20 times in the 10 days before the murder. In addition to those calls— The deceased—what was the relationship of the deceased to the defendant? Of course, the motive of the defendant here is another very strong evidence of guilt. The defendant here was the brother of the deceased's ex-wife. There had been an arranged marriage between the deceased and the Petitioner's sister, and that marriage fell apart after they had one child. There were many statements that Petitioner made talking about how this was not acceptable, that the marriage fell apart, there were child custody problems, and the brother felt responsible for the sister in terms of her well-being and what was going to happen to her next. So there was a strong motive. Not only that, but the actual murder that happened, the deceased was not robbed. This was simply they wanted the person killed, which is consistent with Petitioner's desire to have the deceased killed on behalf of his sister. There is also another strong evidence. One more thing relating to the phone calls is that a very suspicious call happened from the deceased's home to the Petitioner in this case. That call was made when the deceased was not home. He was shown to have been at the airport at the time. It appears, or can be inferred, that the co-defendants here had broken into the deceased's home and made the call to Petitioner, which is also very incriminating. In addition to that, we have a $200 check that was written by Petitioner and endorsed by one of his co-defendants. It appears, it can be inferred, that this was down payment on the rest of the money that was going to be paid for having carried out the murder in this case. So we have telephone calls that were denied, statements by Petitioner denying any relationship with his co-defendants. Before you summarize all of that, because we've heard it and we've read it in your answering brief, do you know why the list of the demands was not turned over to the defense? All I know from that is John Luft was the prosecutor in this case, and he said he vaguely remembered one of his investigators saying that these demands had been, it was a couple months before the trial, that Delgado called and told the investigator that he wanted these things before he testified. And John Luft said he has some vague recollection of talking to the investigator about this call. It wasn't at the forefront of his mind at the time of the trial and the cross-examination. I don't know how this fell through the cracks. Certainly under California statutory law, this should have been turned over. However, under Brady law and constitutional violations, it wasn't material. There was so much evidence here that already impeached Delgado. Isn't part of that question also, could it have been discovered earlier? I want to concede that first issue, because it wasn't turned over. However, it should have been turned over. Under California statutory law, it was only discovered much later. So it's possible that if on cross-examination they had asked the direct question, did you make any demands for your testimony here today, as opposed to any demands for his initial informing on the person, that specific question wasn't asked on cross-examination, but there was no reason that it would have been. I don't want to argue that it should have been discovered through due diligence. At the time, but now we're talking about many, many years later after the trial and after the first petition. How was it discovered and going to Judge Booth's question, could it have been discovered earlier? So the reason, the way that it was discovered was the Messiah claim. We have the discredited declaration by Delgado that came out many, many years later. And that triggered state habeas, this Messiah claim and this new declaration just triggered a state habeas. And my understanding is that the prosecution's files were turned over and that opposing counsel in going through those files found this memo memorializing this telephone call and that was the first time that it had been discovered. So that's how it was ultimately discovered. I'm sorry, did you say that the petitioner's counsel found it in the file or that the prosecutor found it in the file? Petitioner's, my understanding is that petitioner's counsel found it in the file. That the file, the prosecutor's files were turned over and that defense counsel in going through those files found the memo. So that's how it was turned over. So again, even assuming that it couldn't have been discovered earlier, none of this points to actual innocence in this case, just has not overcome this need to show actual innocence. Petitioner argues that Delgado's testimony was the most compelling evidence at trial because he's testifying about an alleged confession. That seems like a pretty strong argument, how do you respond to that? Well, my response would be that confessions of course can be very compelling, but there was so much impeachment evidence of Delgado. There was evidence that he was a paid informant in the past. There was evidence that in this case he had been asking his girlfriend to try to get information on this case. He had potentially gone through the petitioner's papers when he was away from his jail cell. He had been digging for information. He was a known con man, he was digging for information on this case. Some of the statements he made, some of his testimony mirrored newspaper articles about the case where there were factual inaccuracies. The jury knew that the jury had all the evidence it needed to disbelieve Delgado's testimony. The fact that he made demands for his testimony, demands that weren't met, simply wouldn't – it's inconceivable that it could have changed the jurors' views. If the jurors were going to credit the confession part, they were going to credit it. They already had everything they needed to discredit Mr. Delgado's testimony. And certainly you can look back to the court opinions from way back when we didn't have this – when this was not the issue, the issue was just these collateral things. And some courts said, you know, that we have all this evidence and we have the confession. And to go back in hindsight and say, if you didn't have the confession, you know, it's very difficult. Well, Baines and Hildago were tried together, right? Were they tried together? They were tried together, yes. All right. Did Hidalgo make any incriminating statements against Baines in the trial? Hildago – one of the incriminating statements by Hildago was a telephone call to his wife where he said to her something to the effect, like, you know that $200 check? You don't know anything about it. And we don't know the person who – we don't – like, the person who wrote it. And, like, you don't know anything about that check. It's the police ask. So that was very incriminating because that check was from Petitioner. All right. Unless the panel has any additional questions, your time has expired. Thank you. Thank you. Quickly, going through my list, Your Honors. It was me who found the memo in the file. After the OSC issued, the DA made the file available to me. I went over to their offices, and I found it when I reviewed the file. It wasn't me who first said that the informant's testimony was very compelling. First, that was the State Appellate Court, who said exactly that over and over and over again. The AG keeps repeating that the $200 check – He noted that the jury found not true the special circumstance alleging that it was done for a financial gain. And he diminished the probative value of the $200 check that way. And as far as the suspicious call from the victim's home, all these people knew each other. And the victim was away on a trip, and this was all in my paperwork somewhere. But he was away, and the evidence was presented at trial that somebody was living in his apartment while he was away. And there was no, obviously, tying Hidalgo as the caller in that case. The AG keeps repeating that it's not material. But in Weary v. Cain, the Supreme Court addressed exactly this kind of suppressed evidence, which is where an informant clothes himself in righteousness and says, I'm doing this only because I'm a good Samaritan. He violated my moral code. I'm not getting anything out of this. That's exactly what happened in Weary. And the Supreme Court held it was material in that case. So did Mr. Delgado clothe himself in righteousness? I thought the record showed that he did the opposite and freely admitted that he was a con man, and I think he used the word wolf. No, he did not admit he was a con man. He kept calling himself a good Samaritan. He talked about his violated moral code. This murder offended him more than other murders because it was done for, quote, unquote, child support, and that offended him. Oh, and Mr. Baines purportedly didn't accept responsibility, showed no remorse. Those are his explanations. While he's out and out lying about the personal demands he was making. And let me just read to the court the standard. You're going over time, so wrap up in a minute. Okay, this is the standard. The newly discovered evidence could not warrant habeas relief, quote, unless it is of such character as will completely undermine the entire structure of the case upon which the prosecution was based. It has to be conclusive. It has to point unerringly to innocence. So the state judge who issued the OSC found that if I prove these things that I proved, you know, I meet that standard, which is even more onerous, I would suggest to the court, than the standard before the court today. And just one last thing. The AG, of course, diminishes the behavior of the state prosecutor. He vaguely remembered it. He might have forgotten it. If I did something like this as defense counsel, I'd be disbarred, and I could have been criminally prosecuted for suborning perjury. So the court should not, I hope, diminish what happened in this case. Thank you very much, Your Honor. All right, this matter will stand submitted. Thank you both for your argument.
judges: Callahan, Bade, Bough